**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CECIL BOYD *et al.*, | : | |
| Plaintiffs, | : | |
| | : | Civil Action No.: 04-0543 (RMU) |
| v. | : | |
| | : | Document Nos.: 51, 53, 55 |
| DISTRICT OF COLUMBIA *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GRANTING IN PART DEFENDANT ROBINSON'S MOTION FOR SUMMARY JUDGMENT;
TRANSFERRING THE REMAINING CLAIMS FOR LACK OF JURISDICTION**

## I. INTRODUCTION

Plaintiffs Cecil Boyd and Dennis Fuller bring suit as the alleged fathers of the fetuses aborted by two female District of Columbia Emergency Medical Technician ("EMT") trainees. The defendants are the District of Columbia ("the District") and the teacher of the training course, Interim Chief of Emergency Medical Services Operations Samantha Robinson. The plaintiffs claim that Robinson told the female members of her EMT training class that they could face termination if they became pregnant. As a result, two members of the class impregnated by the plaintiffs had abortions.

This matter comes before the court on the plaintiffs' three charges.[1] The first is a 42 U.S.C. § 1983 claim against Robinson for infringing the plaintiffs' constitutional rights under the color of state law. The second is a common-law negligence claim against Robinson for infringing the plaintiffs' protected interests. The third is a vicarious liability claim against the

[1] The plaintiffs have also accused the District of Columbia ("the District") of violating 42 U.S.C. § 1983, but they have since voluntarily dismissed this claim. Pls.' Opp'n to Dist. of Columbia's Mot. for Summ. J. ("Pls.' Dist. Opp'n") at 12.

District for torts committed by Robinson in the course of her employment. Robinson requests that the court grant her motion for summary judgment on the first two claims, and the District requests that the court grant its motion for summary judgment on the remaining claim. Because Robinson has qualified immunity from § 1983 claims, the court grants summary judgment on the first claim. Because the remaining claims do not provide an independent basis for federal jurisdiction, the court transfers the claims to the D.C. Superior Court.

## II. FACTUAL & PROCEDURAL BACKGROUND

This case stems from an earlier case in which three female Emergency Medical Technician ("EMT") trainees brought a discrimination suit against the District of Columbia Fire/EMT Department. *Jane Doe I v. District of Columbia*, No. 02cv2338 (D.D.C. Nov. 25, 2002). In that case, the trainees claimed that Samantha Robinson, then Interim Chief of Emergency Medical Services Operations,[2] told them that if they became pregnant, they could lose their job. District of Columbia's Mot. for Summ. J. ("Dist.'s Mot."), Ex. 1 ("OIG Report") at 9. The trainees also claimed that after becoming pregnant, they had abortions to keep their jobs. Pls.' Opp'n to District of Columbia's Mot. for Summ. J. ("Pls.' Dist. Opp'n") at 2 & Ex. 2 at 3. They then sued the District and later settled their claims. Pls.' Dist. Opp'n at 2 n.1.

Unlike the earlier suit, which was brought by the trainees who had abortions, this suit is brought by Cecil Boyd and Dennis Fuller, the putative fathers of the fetuses aborted by two of the three female trainees. Am. Compl. ¶ 8. The plaintiffs state in their depositions that they

---

2 The record is unclear whether Robinson was the Interim Chief of Emergency Medical Services Operations, or if she was the Interim Assistant Chief. *Compare* District of Columbia's Mot. for Summ. J. ("Dist.'s Mot."), Ex. 1 ("OIG Report") (stating that Robinson was the Interim Chief); *with* Dist.'s Mot., Ex. 3 & Ex. 4 (stating that Robinson was the Interim Assistant Chief). Regardless of her title, Robinson oversaw the training sessions for new EMT recruits. Robinson's Am. Mot. for Summ. J. at 4.

were engaged in monogamous relationships with the female trainees, that they had intercourse around the time the fetuses were conceived, and that they did not use birth control. Pls.' Dist. Opp'n at 10; Pls.' Sur-reply at 11; Dist.'s Mot., Ex. 9 at 9, Ex. 11 at 4, Ex. 12 at 8. The amended complaint, filed December 12, 2006, alleges that the District of Columbia Fire/EMS Department infringed the plaintiffs' rights by telling the trainees that they "could be terminated if they became pregnant during the first year of employment." Am. Compl. ¶¶ 14, 19, 25, 27; OIG Report at 10.

The plaintiffs bring three causes of action. Am. Compl. ¶ 14. The first is a 42 U.S.C. § 1983 claim against Robinson for infringing the plaintiffs' constitutional rights under the color of state law. Am. Compl. ¶ 19. The second is a negligence claim against Robinson infringing the plaintiffs' protected interests. Am. Compl. ¶ 25. The third is a vicarious liability claim against the District for torts committed by Robinson in the course of her employment. Am. Compl. ¶ 27. The District and Robinson each filed motions for summary judgment on April 9, 2007. The court turns to the pending motions.

## III. ANALYSIS

### A. The Court Denies in Part Robinson's Motion for Summary Judgment

#### 1. The Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

**2. The Court Grants Robinson's Motion to For Summary Judgment on the Plaintiffs' Constitutional Claims because Robinson has Qualified Immunity**

The plaintiffs claim that defendant Robinson violated their constitutional rights under the color of state law[3] and, therefore, is liable under 42 U.S.C. § 1983. Am. Compl. ¶ 19. In response, Robinson argues that as a government employee, she has qualified immunity. Robinson's Am. Mot. for Summ. J. ("Robinson's Mot.") at 3. Before addressing the merits of the constitutional claim, it is proper to determine if Robinson has qualified immunity because such immunity would defeat the claim at its start. *Saucier v. Katz,* 533 U.S. 194, 200 (2001) (explaining that qualified immunity is an immunity from suit rather than an affirmative defense).

**a. The Legal Standard for a Qualified Immunity Defense**[4]

42 U.S.C. § 1983 creates a cause of action against any person who, acting under the color of state law, abridges rights guaranteed by the Constitution or the laws of the United States. *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 61 (D.D.C. 2000); *Abramson v. Bennett*, 707 F. Supp. 13, 16 (D.D.C. 1989). State officials may be entitled to a defense of qualified immunity, however. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity "shield[s officials] from liability for civil damages insofar as [the official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 614 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "provides not simply a defense to liability, but also an entitlement not to stand trial or face the other burdens of

---

3 For the purposes of § 1983, the District of Columbia is treated as a state. 28 U.S.C. § 1343(b)(1); *Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994).

4 With respect to qualified immunity, this court cites to § 1983 suits and *Bivens* suits interchangeably because the qualified immunity analysis is the same. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

litigation." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In evaluating a § 1983 claim to which a defendant has raised the qualified immunity defense, the court must follow a two-pronged analysis. *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001) (citing *Wilson*, 526 U.S. at 609). First, as a threshold matter, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In defining an "actual constitutional right," a court must be careful to avoid defining the right in overly general terms "lest [it] strip the qualified immunity defense of all meaning." *Butera*, 235 F.3d at 646. Instead, the court must identify the right with the appropriate level of specificity so as to allow officials to reasonably anticipate when their conduct may give rise to liability for damages. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Second, the court must decide whether the constitutional right was clearly established at the time of the defendant's action. *Id.* A right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Wilson*, 526 U.S. at 614-15); *see Crawford-El v. Britton*, 523 U.S. 574, 591 (1998) (stating that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct"). Although the specific action in question need not have been held unlawful by the courts, its unlawfulness in light of pre-existing law must have been apparent to the defendant. *Butera*, 235 F.3d at 646 (quoting *Anderson*, 483 U.S. at 640). Whether the rights are clearly established is a pure question of law to be resolved by the court. *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007).

**b. The Plaintiffs Have a Constitutional Familial Right**

As noted above, the first step of the qualified immunity inquiry is to determine whether there is an actual constitutional right. *Butera*, 235 F.3d at 646. The plaintiffs argue that the defendants violated their fifth, ninth and fourteenth amendment rights. The court, in a prior opinion denying the District's motion to dismiss, determined that the plaintiffs alleged a deprivation of an actual constitutional right because the plaintiffs had familial rights to the aborted fetuses. Mem. Op. (Feb. 10, 2005) at 5 (citing *Harbury v. Deutch*, 233 F.3d 596, 604 (D.C. Cir. 2000)). This is sufficient to satisfy the first phase of the analysis as there has been no relevant change of fact or law.[5]

**c. The Plaintiffs' Constitutional Right is Not Clearly Established**

While the court recognizes that a familial right exists, whether the right, in this context, extends to a fetus is not clearly established. In evaluating whether a right has been clearly established, the court looks to decisions by other courts involving the same issue. *Wilson*, 526 U.S. at 615-16; *Butera*, 235 F.3d at 650, 654. The issue here, an unwed father's familial rights to a fetus, has not been addressed by the D.C. Circuit Court or any other circuit court.[6] Given the novelty of this issue, it is unlikely that a reasonable government official would think that

---

5 Robinson makes the novel claim that there was no constitutional violation in this case even assuming "there is a general right to conceive and raise children under the 5th, 9th and 14th amendments." Robinson's Am. Mot. for Summ. J. ("Robinson's Mot.") at 7. She argues that the plaintiffs' and the Jane Does' decisions to become pregnant indicates that they were not influenced by her statements. *Id.* at 7-8. But, Robinson fails to recognize that these rights are not limited to the moment of conception. *See, e.g.*, *Stanley v. Illinois*, 405 U.S. 645 (noting that "[t]he rights to conceive and raise one's children have been deemed essential") (internal quotation omitted). And the record indicates that Jane Doe 1 and 2 had abortions because they thought they would lose their jobs based on Robinson's statements. Pls.' Dist. Opp'n, Ex. 2 & 3. Robinson does not dispute this.

6 The Seventh Circuit, in *Pena v. Mattox*, held that a right is not created "from the mere fact of fatherhood, consequent upon a criminal act that our society does take seriously and that is not cemented (whoever's fault that is) by association with the child." 84 F.3d 894, 900 (7th Cir. 1996). This holding is inapposite here where the child was not "consequent upon a criminal act."

counseling a new EMT not to get pregnant during her first year would violate the trainee's *partner's* constitutional rights. *See Anderson*, 483 U.S. at 640 (stating that "clearly established" means that "the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right," *i.e.*, the violation must be "apparent"). Thus the right is not clearly established, and Robinson is entitled to qualified immunity from this claim. Accordingly, the court dismisses the plaintiffs' constitutional claim. Having now dismissed this claim, the court takes this opportunity to revisit its jurisdiction.

**B. The Court does not Exert Jurisdiction Over the Plaintiffs' Common-Law Claims**

**1. Legal Standard for Supplemental Jurisdiction**

"When a federal court has an independent basis for exercising federal jurisdiction, it may, in certain circumstances, also exercise supplemental jurisdiction over related claims under state law." *Women Prisoners of the D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996). To determine when the assertion of supplemental jurisdiction is appropriate, the district court should apply a two-part test. *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). The court first must determine whether the state[7] and federal claims derive from a common nucleus of operative fact. *Id.* If so, "the court has the power, under Article III of the Constitution, to hear the state claim." *Id.* (noting the Supreme Court's observation that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right"). In deciding whether to assert supplemental jurisdiction over a state claim the court should consider whether judicial economy, convenience and fairness to litigants weigh in favor of doing so. *Id.* A court may decline to exercise supplemental jurisdiction, however, if the state claim

[7] "State," for the purpose of supplemental jurisdiction, includes the District of Columbia. 28 U.S.C. § 1367(e).

raises a novel or complex issue of state law, substantially predominates over the federal claims or remains after the court has dismissed the federal claims. *Id.* at 921 (citing 28 U.S.C. § 1367(c)).

**2. The Court Transfers the Plaintiffs' Common-Law Claims to the D.C. Superior Court**

The District of Columbia argues that this court should not exert jurisdiction over the plaintiffs' common-law claim because the plaintiffs voluntarily dismissed their original source of federal jurisdiction under § 1983. Dist.'s Reply at 2. The plaintiffs, on the other hand, encourage this court to accept jurisdiction because judicial economy, fairness to the litigants and comity weigh in favor of doing so. Pls.' Sur-reply at 4.

It is within the court's discretion whether to exert jurisdiction over supplemental claims after the dismissal of "all claims over which [the court] has original jurisdiction." 28 U.S.C. § 1367(c)(3). And "in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). In light of the court's dismissal of the plaintiffs' federal claim brought against defendant Robinson, nothing before the court would indicate that this is anything other than "the usual case."[8] *Id.* Accordingly, because the plaintiffs no longer have a federal jurisdictional leg on which to stand, the court transfers the plaintiffs' common-law claims to the Superior Court for the District of Columbia.

---

8 The plaintiffs' argument that dividing the case between two courts would risk inconsistent results, Pls.' Sur-reply at 3-4, is no longer applicable due to the court's dismissal of the plaintiffs' federal claim.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Robinson's motion for summary judgment and denies the District of Columbia's motion for summary judgment. In addition, the court transfers the remaining claims to the Superior Court for the District of Columbia. An order consistent with the Memorandum Opinion is separately and contemporaneously issued this 26th day of November, 2007.

RICARDO M. URBINA
United States District Judge